UNITED STATES DISTRICT COURT
DISTRICT MASSACHUSETTS

05 - 10289 MEW

CHARLES RASO, TRUSTEE )
of the MASSACHUSETTS BRICKLAYERS )
AND MASONS HEALTH AND WELFARE, )
PENSION AND ANNUITY FUNDS, )
)
      Plaintiff, )    C. A. No.
)
v. )
)
UNI-CON FLOOR, INC. and JOHN PACHECO )
)
      Defendants. )
)
)

FILED
IN CLERKS OFFICE
2005 FEB -8

U.S. DISTRICT COURT
DISTRICT OF MASS.

MAGISTRATE JUDGE _Dein_

RECEIPT # 62084
AMOUNT $250.00
SUMMONS ISSUED yes
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. TOM
DATE 2/11/05

COMPLAINT

COUNT I
(as Against Defendant Uni-Con Floors, Inc.)

1.    This is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq., brought on behalf of Massachusetts Bricklayers and Masons Health and Welfare, Pension and Annuity Funds ("Funds") for damages and injunctive relief arising from unpaid and delinquent employee benefit contributions.

2.    This court has jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and venue lies in this district pursuant to 29 U.S.C. §1132(e)(2).

3.    Plaintiff, Charles Raso, is a Trustee of the Funds and is a "fiduciary" within the meaning of Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3). The Funds are "multi-employer plan(s)" within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. §1002(37)(A) and are "employee benefit plan(s)" or "plan(s)" within the meaning of Section 3(3) of ERISA, 29 U.S.C. §1002(3). The Funds have their principal office at and are administered from 550 Medford

Street Charlestown, Massachusetts 02129.

4.  Defendant Uni-Con Floors, Inc. ("Uni-Con") is an employer with a place of business in Fall River, MA. Defendant is an "employer" within the meaning of 29 U.S.C. §1002(5) and an employer in an industry affecting commerce within the meaning of 29 U.S.C. §152(2), (6) and (7).

5.  Massachusetts Bricklayers and Allied Craftsmen Local 3, Eastern, Massachusetts ("Local 3") is a "labor organization" within the meaning of 29 U.S.C. §152(5).

6.  At all material times, Uni-Con was obligated by the terms of one or more Collective Bargaining Agreements between it and Local 3 and by the terms of the Agreements and Declarations of Trust of the Funds to which Defendant Uni-Con was bound to make contributions on behalf of certain employees to the Funds.

7.  Defendant Uni-Con has failed to make required contributions to the Funds in violation of Section 515 of ERISA, 29 U.S.C. §1145.

8.  On or about September 14, 2004, Defendant Uni-Con entered into a Settlement Agreement to pay all delinquent contributions. (The agreement is attached hereto as Exhibit A.)

9.  Defendant Uni-Con has failed to make payments in accordance with the Settlement Agreement and has therefore defaulted under the terms of said agreement.

10. Pursuant to the Settlement Agreement, the Funds maintain the right to pursue all damages available under the Collective Bargaining Agreement and ERISA.

WHEREFORE, Plaintiff demands that judgment enter in accordance with Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2) against Uni-Con Floors, Inc.:

1. Awarding the Funds the following amounts:

a. all unpaid contributions;

    b. contractual interest on those contributions from the date the payment was due at contractual rate of 1.5% per month, compounded monthly;

    c. contractual liquidated damages and interest on such contributions;

    d. all costs and reasonable attorney's fees incurred by the Funds in connection with this action; and

2. Permanently enjoining the Defendant Uni-Con from violating its obligations under the terms of its collective bargaining agreements with Local 3 and the Funds' Agreements and Declarations of Trust to make timely contributions and reports to the Funds; and

3. Ordering such other and further relief as this court may deem just and proper.

## COUNT II
(as Against Defendant John Pacheco)

11. Plaintiff hereby incorporates by reference paragraphs 1 to 10 of this Complaint.

12. At all times relevant to this action, Defendant John Pacheco (Pacheco) is an individual residing at 5 Granada Drive, Westport, MA.

13. On or about September 12, 2004, Defendant Pacheco, signed a Guaranty, attached hereto as Exhibit B, under which he guaranteed payment of monies owed to the Funds under the Settlement Agreement upon default of said Agreement by Uni-Con.

14. As Uni-Con has defaulted in its payments, under the terms of the Settlement Agreement, Defendant Pacheco owes to the Funds all outstanding sums due under the Settlement Agreement.

WHEREFORE, Plaintiff demands that judgment enter against Defendant Pacheco:

1. Awarding the Funds the following amounts:

    a. all outstanding sums owed under the Settlement Agreement between Plaintiff

3

and Defendant Uni-Con;

b. contractual interest on those contributions from the date the payment was due at contractual rate of 1.5% per month, compounded monthly;

c. contractual liquidated damages and interest on such contributions;

d. all costs and reasonable attorney's fees incurred by the Funds in connection with this action; and

2. Ordering such other and further relief as this court may deem just and proper.

Dated: February //, 2005

Respectfully submitted,

Catherine M. Campbell
BBO #549397
FEINBERG, CAMPBELL & ZACK, P.C.
177 Milk Street
Boston, MA 02109
(617) 338-1976

_____
Attorney for plaintiff,
Charles Raso, Trustee

## CERTIFICATE OF SERVICE

I, Catherine M. Campbell, hereby certify that I caused a copy of the foregoing to be mailed this date by certified mail, return receipt requested, to the United States Secretaries of Labor and Treasury.

_____
Catherine M. Campbell

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into between the Massachusetts Bricklayers and Masons Trust Funds (collectively the "Funds") and Uni-Con Floors, Inc. ("Uni-Con").

## RECITALS

WHEREAS, Uni-Con is a party to collective bargaining agreements (CBAs) with Bricklayers and Allied Craftsmen Local 3, Eastern Massachusetts (Local 3) which obligates it to make benefit contributions to the Funds;

WHEREAS, Uni-Con is delinquent in the payment of such contributions pursuant to the aforementioned CBAs;

WHEREAS, Uni-Con owes to the Fund benefit contributions, calculated pursuant to its remittance reports, a sum of Seven-Nine Thousand Nine Hundred And Thirty-Five Dollars And Sixty Cents ($79,935.60);

WHEREAS, Uni-Con owes contributions for work performed at the Jordan Furniture Project in Reading, MA;

WHEREAS, the parties are desirous of settling all differences between them; and

WHEREAS, the Trustees of the Funds have approved this Agreement;

NOW THEREFORE, in consideration of the mutual undertakings set forth below, it is agreed by the Funds and the Uni-Con as follows:

## PAYMENT

1. Uni-Con will pay a sum of Thirty Thousand Dollars And Zero Cents ($30,000) to the Funds by check made payable to the Massachusetts Bricklayers and Masons Trust Funds and delivered no later than September 28, 2004 to the office of Fund Counsel, Feinberg, Campbell & Zack, P.C., c/o Catherine M. Campbell, 177 Milk Street, Suite 300, Boston, MA 02109.

2. Uni-Con will pay a sum of Twenty-Four Thousand Two Hundred Twenty-One Dollars And Forty-Six Cents ($24,221.46) to the Funds no later than October 20, 2004. The Funds agree to accept as payment of this sum, a joint party check issued by Jackson Construction Co. made pursuant to the Joint Check Agreement (Exhibit 1) signed simultaneously with this Settlement Agreement.

3. Uni-Con will be solely responsible for ensuring that a) the check is issued as indicated in the Joint Check Agreement and b) the check is delivered no later than October 20, 2004 to the office of Fund Counsel.

4. Uni-Con will send to Fund Counsel's office no later than October 10, 2004, remittance reports indicating the hours and contributions owed to the Fund for work performed within the scope of its collective bargaining agreement with Local 3 at the Jordan Furniture project in Reading, MA.

5. Uni-Con will pay to the Funds a sum of Twenty-Five Thousand Seven Hundred Fourteen Dollars and Fourteen Cents ($25,714.14) plus contributions owed as indicated on the remittance reports described in Paragraph 5. Payments will be made in monthly installments of Two Thousand Five Hundred Dollars and Zero Cents ($2,500.00) with interest accruing at the contract rate of 1.5% per month, compounded monthly. Checks will be made payable to the Massachusetts Bricklayers and Masons Trust Funds, delivered to Fund Counsel as set forth in Paragraph One and made in accordance with the Amortization Schedule to be prepared by Fund Counsel.

6. On or before January 1, 2005, Uni-Con will pay Ten Thousand Dollars and Zero Cents ($10,000) on the balance of the Principal amount owed on that date and continue to make monthly payments on the adjusted Principal amount with interest accruing at 1.5% per month,

compounded monthly. Payments will be made as set forth in the Amortization Schedule prepared by Fund Counsel.

7. The Funds reserve the right to audit the payroll records of Uni-Con for the delinquency period and to collect such additional sums as may be owed pursuant to the audit.

8. All future contributions owed to the Funds in accordance with the CBAs and the Funds' Agreements and Declarations of Trust will be made on a weekly basis until all delinquencies are paid. Payment for future contributions will be made payable to the Massachusetts Bricklayers and Masons Trust Funds and sent directly to the Funds office.

9. Failure to make any payment or contribution as stated in this agreement will result in a default of this agreement. In the event of such default, the Funds retain the right to pursue all remedies available to the Funds for the collection of delinquent contributions under the collective bargaining agreement and the Employee Retirement Income Security Act of 1974 (ERISA) including interest, liquidated damages, costs and fees.

10. In order to secure payments set forth above, John Pacheco will execute a personal guarantee attached hereto as Exhibit 2.

11. This Agreement may not be altered, amended, modified or otherwise changed in any respect whatsoever, except by a dated writing duly executed by the parties to this Agreement or their authorized representatives. No provision of this Agreement may be waived orally or by the parties' conduct.

12. In the event that any provision of this Agreement is unenforceable, or is held by any agency or court to be unenforceable, the validity of the remaining provisions shall not be affected and the unenforceable provisions shall be deemed not to be a part of this Agreement. This

document and its terms shall be construed and enforced as if such unenforceable provision had never comprised a part hereof.

13. This Agreement shall be deemed to have been entered into in Boston, Massachusetts. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts without reference to conflict of laws, rules, or principles and without regard to the present or future domiciles of the parties.

14. This Agreement is the result of joint negotiation and preparation. Thus, any ambiguity or lack of clarity shall not be construed against any party by virtue of the fact that the specific language at issue may have been, or was, prepared by that party.

15. The parties signing below represent and warrant that they have actual authority to bind their respective parties:

| MASSACHUSETTS BRICKLAYERS AND MASONS TRUST FUNDS | UNI-CON FLOORS, INC. |
|---|---|
| By: *[signature]* <br> Name: Charles Raso <br> Title: Trustee <br> Dated: 9/14/04 | By: *[signature]* <br> Name: John Pacheco <br> Title: CEO <br> Dated: 09/12/04 |

|  | Amortization Schedule October 30, 2004 - December 30, 2004 | | | | |
|---|---|---|---|---|---|
|  | UNI-CON FLOORS, INC. | | | | |
| Principal | 30,154.14 | | | | |
| Interest Annual | 18.00% | | Calculated amount | | |
| number of Months | | | $0.00 | | |
| Monthly Payments | $2,500.00 | | | | |
|  | Principal | Interest | Total Pmt | Balance | |
|  |  |  |  | 30,154.14 | |
| 30-Oct-04 | 2,047.69 | 452.31 | 2,500.00 | 28,106.45 | |
| 30-Nov-04 | 2,078.40 | 421.60 | 2,500.00 | 26,028.05 | |
| 30-Dec-04 | 2,109.58 | 390.42 | 2,500.00 | 23,918.47 | |
|  | Amortization Schedule from January 1, 2004 after $10,000 Payment | | | | |
|  | UNI-CON FLOORS, INC. | | | | |
| Principal | 13,918.47 | | | | |
| Interest Annual | 18.00% | | Calculated amount | | |
| number of Months | | | $0.00 | | |
| Monthly Payments | $2,500.00 | | | | |
|  | Principal | Interest | Total Pmt | Balance | |
|  |  |  |  | 13,918.47 | |
| 1/30/05 | 2,291.22 | 208.78 | 2,500.00 | 11,627.25 | |
| 02/28/05 | 2,325.59 | 174.41 | 2,500.00 | 9,301.66 | |
| 3/30/05 | 2,360.48 | 139.52 | 2,500.00 | 6,941.18 | |
| 4/30/05 | 2,395.88 | 104.12 | 2,500.00 | 4,545.30 | |
| 05/30/05 | 2,431.82 | 68.18 | 2,500.00 | 2,113.48 | |
| 6/30/05 | 2,113.48 | 31.70 | $2,145.18 | - | |

GUARANTY OF JOHN PACHECO

GUARANTY, dated as of 09/12/04, by John Pacheco (the "Guarantor"), in favor of Massachusetts Bricklayers and Masons Trust Funds (the "Funds"). In consideration of the Funds' giving, in its discretion, time, credit or accommodations to Uni-Floors, Inc. ("Uni-Con," together with its successors, the "Debtor") pursuant to Settlement Agreement between the Funds and Uni-Con of even date (the "Agreement") and for other good and valuable consideration, the receipt and sufficiency of which by Guarantor is hereby acknowledged, the Guarantor agrees as follows:

1. <u>Guaranty of Payment and Performance</u>. The Guarantor hereby guarantees to the Funds the full and punctual payment when due (whether at maturity, by acceleration or otherwise), and the performance, of all liabilities, agreements and other obligations of the Debtor to the Funds, whether direct or indirect, absolute or contingent, due or to become due, secured or unsecured, now existing or hereafter arising out of the Settlement Agreement (the "Obligations"). This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance of the Obligations and not of their collectibility only and is in no way conditioned upon any requirement that the Funds first attempt to collect any of the Obligations from the Debtor or resort to any security or other means of obtaining their payment. Should the Debtor default in the payment or performance of any of the Obligations, the obligations of the Guarantor hereunder shall become immediately due and payable to the s, without demand or notice of any nature, all of which are expressly waived by the Guarantor. Payments by the Guarantor hereunder may be required by the Funds on any number of occasions.

2. <u>Guarantor's Agreement to Pay</u>. The Guarantor further agrees, as the principal obligor and not as a guarantor only, to pay to the Funds, on demand, all costs and expenses (including court costs and legal expenses) incurred or expended by the Funds in connection with the Obligations, this Guaranty and the enforcement thereof, together with interest on amounts recoverable under this Guaranty from the time such amounts become due until payment, at the rate per annum equal to that set forth in the Settlement Agreement provided, that if such interest exceeds the maximum amount permitted to be paid under applicable law, then such interest shall be reduced to such maximum permitted amount.

3. <u>Limited Guaranty</u>. The liability of the Guarantor hereunder shall be limited to the sums owed pursuant to the Agreement.

4. <u>Waiver by Guarantor; Funds' Freedom to Act</u>. The Guarantor agrees that the Obligations will be paid and performed strictly in accordance with their respective terms regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of the Funds with respect thereto. The Guarantor waives presentment, demand, protest, notices of acceptance, notice of Obligations incurred and all other notices of any kind, all defenses which may be available by virtue of any valuation, stay, moratorium law or other similar law now or hereafter in effect, any right to require the marshaling of assets of the Debtor, and all suretyship defenses generally. Without limiting the generality of the foregoing, the Guarantor agrees to the provisions of any instrument evidencing, securing or otherwise executed in connection with

1

any Obligation and agrees that the obligations of the Guarantor hereunder shall not be released or discharged, in whole or in part, or otherwise affected by (i) the failure of the Funds to assert any claim or demand or to enforce any right or remedy against the Debtor; (ii) any extensions or renewals of any Obligation; (iii) any rescissions, waivers, amendments or modifications of any of the terms or provisions of any agreement evidencing, securing or otherwise executed in connection with any Obligation; (iv) the substitution or release of any entity primarily or secondarily liable for any Obligation; (v) the adequacy of any rights the Funds may have against any collateral or other means of obtaining repayment of the Obligations; (vi) the impairment of any collateral securing the Obligations, including without limitation the failure to perfect or preserve any rights the Funds might have in such collateral or the substitution, exchange, surrender, release, loss or destruction of any such collateral; or (vii) any other act or omission which might in any manner or to any extent vary the risk of the Guarantor or otherwise operate as a release or discharge of the Guarantor, all of which may be done without notice to the Guarantor.

5.    **Unenforceability of Obligation Against Debtor**. If for any reason the Debtor has no legal existence or is under no legal obligation to discharge any of the Obligations, or if any of the Obligations have become irrecoverable from the Debtor by operation of law or for any other reason, this Guaranty shall nevertheless be binding on the Guarantor to the same extent as if the Guarantor at all times had been the principal obligor on all such Obligations. In the event that acceleration of the time for payment of the Obligations is stayed upon the insolvency, bankruptcy or reorganization of the Debtor, or for any other reason, all such amounts otherwise subject to acceleration under the terms of any agreement evidencing, securing or otherwise executed in connection with any Obligation shall be immediately due and payable by the Guarantor.

6    **Subrogation; Subordination**. Until the payment and performance in full of all Obligations and any and all obligations of the Debtor to the Funds, the Guarantor shall not exercise any rights against the Debtor arising as a result of payment by the Guarantor hereunder, by way of subrogation or otherwise, and will not prove any claim in competition with the Funds or its affiliates in respect of any payment hereunder in bankruptcy or insolvency proceedings of any nature; the Guarantor will not claim any set-off or counterclaim against the Debtor in respect of any liability of the Guarantor to the Debtor; and the Guarantor waives any benefit of any right to participate in any collateral indebtedness of the Debtor now or hereafter held by the Guarantor and is hereby subordinated to the prior payment in full of the Obligations, provided that so long as no default in the payment or performance of the Obligations has occurred and is continuing, or no demand for payment of any of the Obligations has been made that remains unsatisfied, the Debtor may make, and the Guarantor may demand and accept, any scheduled payments of principal of and interest on such subordinated indebtedness in the accounts, at the rates and on the dates specified in such instruments, security or other writings as shall evidence such subordinated indebtedness. The Guarantor agrees that after the occurrence of any default in the payment or performance of the Obligations, the Guarantor will not demand, sue for or otherwise attempt to collect any such indebtedness of the Debtor to the Guarantor until the Obligations shall have been paid in full. If, notwithstanding the foregoing sentence, the Guarantor shall collect, enforce or receive any amounts in respect of such indebtedness, such amounts shall be collected, enforced and received by the Guarantor as trustee for the Funds and be paid over to the Funds on account of the Obligations without affecting in any

manner the liability of the Guarantor under the provisions of this Guaranty.

7. Security; Set-off. At any time that, and for so long as Debtor is in default of the Obligations, Funds shall have, as security for the full and punctual payment and performance of the Guarantor's obligations hereunder, a continuing lien on and security interest in all securities or other property belonging to the Guarantor now or hereafter held by the Funds and in all deposits (general or special, time or demand, provisional or final) and other sums credited by or due from the Funds to the Guarantor or subject to withdrawal by the Guarantor; and regardless of the adequacy of any collateral or other means of obtaining repayment of the Obligations, the Funds is hereby authorized at any time and from time to time while Debtor is in default of the Obligations, without notice to the Guarantor (any such notice being expressly waived by the Guarantor) and to the fullest extent permitted by law, to set off and apply such deposits and other sums against the obligations of the Guarantor under this Guaranty, whether or not the Funds shall have made any demand under this Guaranty.

8. Further Assurances. The Guarantor agrees that he/she will, from time to time at the request of the Funds, provide to the Funds his/her most recent audited and unaudited balance sheets, financial statements and related statements of income and changes in financial condition and such other information relating to the business and affairs of the Guarantor as the Funds may reasonably request, including federal income tax returns. The Guarantor also agrees to do all such things and execute all such documents, including financing statements, as the Funds may consider necessary or desirable to give full effect to this Guaranty and to perfect and preserve the rights and powers of the Funds hereunder.

9. Successors and Assigns. This Guaranty shall be binding upon the Guarantor, its successors and assigns, and shall inure to the benefit of and be enforceable by the Funds and its successors, transferees and assigns. Without limiting the generality of the foregoing sentence, the Funds may assign or otherwise transfer any agreement or any note held by it evidencing, securing or otherwise executed in connection with the Obligations, or sell participations in any
interest therein, to any other person or entity, and such other person or entity shall thereupon become vested, to the extent set forth in the agreement evidencing such assignment, transfer or participation, with a right in respect thereof granted to the Funds herein.

10. Amendments and Waivers. No amendment or waiver of any provision of this Guaranty nor consent to any departure by the Guarantor therefrom shall be effective unless the same shall be in writing and signed by the Funds. No failure on the part of the Funds to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

11. **Notices**. All notices and other communications called for hereunder shall be made in writing and, unless otherwise specifically provided herein, shall be deemed to have been duly made or given when delivered by hand or mailed first class mail postage prepaid or, in the case of telegraphic or telexed notice, when transmitted, answer back and received, Funds' counsel, Feinberg, Campbell & Zack, P.C., c/o Catherine M. Campbell, Esq., 177 Milk Street, Suite 300, Boston, MA 02109, or at such address as either may designate in writing.

12. **Governing Law; Consent to Jurisdiction**. This Guaranty is intended to take effect as a sealed instrument and shall be governed by, and construed in accordance with, the laws of the Commonwealth of Massachusetts. The Guarantor agrees that any suit for the enforcement of this Guaranty may be brought in the courts of the Commonwealth of Massachusetts or any Federal Court sitting therein and consents to the non-exclusive jurisdiction of such court and to service or process in any such suit being made upon the Guarantor by mail at the address specified in Section 11 hereof. The Guarantor hereby waives any objection that it may now or hereafter have to the venue of any suit or any such court or that such suit was brought in an inconvenient court.

13. **Miscellaneous**. This Guaranty constitutes the entire agreement of the parties with respect to the matters set forth herein. The rights and remedies herein provided are cumulative and not exclusive of any remedies provided by law or any other agreement, and this Guaranty shall be in addition to any other guaranty of the Obligations. The invalidity or unenforceability of any one or more sections of this Guaranty shall not affect the validity or enforceability of its remaining provisions. Captions are for the ease of reference only and shall not affect the meaning of the relevant provisions. The meanings of all defined terms used in this Guaranty shall be equally applicable to the singular and plural forms of the terms defined.

14. **Jury Waiver:** GUARANTOR AND FUNDS EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS INSTRUMENT, THE OBLIGATIONS, IN ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH. GUARANTOR CERTIFIES THAT NEITHER FUNDS NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED EXPRESSLY OR OTHERWISE, THAT FUNDS WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

IN WITNESS WHEREOF, the Guarantor has executed and delivered this Guaranty, or caused this Guaranty to be executed and delivered as of the date appearing on page one.

Witness: *[signature: Jamie K. Pacheco]*

Guarantor: John Pacheco

By: *[signature: John Pacheco]*